UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAMELA ARMISTED, et al.,

    Plaintiffs,

v.

STATE FARM MUTUAL AUTO-
MOBILE INSURANCE COMPANY,

    Defendant.
_____/

CIVIL ACTION NO. 07-10259

DISTRICT JUDGE ARTHUR J. TARNOW

MAGISTRATE JUDGE DONALD A. SCHEER

# REPORT AND RECOMMENDATION

**I.    RECOMMENDATION**:

I recommend that Plaintiffs' Motion for Entry of Default Judgment for Continuous and Repeated Discovery Abuses be denied as to the prayer for default judgment, but that a substantial monetary sanction should be imposed upon the Defendant for its obstructive conduct. I further recommend that Plaintiffs' Motion for Default for Failure to Produce Documents in Violation of Court Order be denied.

**II.    REPORT**:

    **A.    Procedural History**

This action was removed to this court on January 16, 2007. An Amended Complaint was filed on October 3, 2007. Defendant filed its Answer on October 22, 2007. Numerous discovery disputes have been referred to the magistrate judge for determination. Motions for summary judgment were filed by Plaintiff, on August 28, 2008, and Defendant on August 29, 2008. Those motions are set for hearing on October 21, 2008.

The instant motions were filed on August 13, 2008 and August 19, 2008, respectively. The motions were brought on for hearing on September 23, 2008.

**B.     Applicable Law and Standard of Review**

Dismissal of an action for failure to cooperate in discovery is a sanction of last resort that should be imposed only if the court concludes that the offending party's failure is due to wilfulness, bad faith or fault. See <u>Patton v. Aerojet Ordnance Co.</u>, 765 F.2d 604 (6th Cir. 1985). As a general matter, the disposition of a motion for default lies within the district court's discretion. Our circuit applies a four factor test to determine whether a decision to impose sanctions under Rule 37 amounts to an abuse of discretion. Those factors are: (1) whether the offending party's failure to cooperate is due to wilfulness, bad faith or fault; (2) whether the adversary was prejudiced by the party's failure to cooperate in discovery; (3) whether the offending party was warned that a failure to cooperate could lead to the sanction; and (4) whether less drastic sanctions were first imposed or considered. See <u>Doe v. Lexington-Fayette Urban Government</u>, 407 F.3d 755, 766 (6th Cir. 2005); <u>Bank One of Cleveland, N.A. v. Abbe</u>, 916 F.2d 1067 (6th Cir. 1990).

**C.     Analysis**

The course of discovery in this case has been exceptionally contentious. The majority of discovery disputes have been referred to the magistrate judge for disposition. More than twenty separate Orders have been entered in connection with contested discovery issues. The majority of matters raised in the instant motions have been previously addressed in those Orders. Of the eighteen items specifically addressed in the party's Joint List of Unresolved Issues, I find that four are worthy of note. Those issues are:

(1) failure to produce the Auto Claim Manual; (2) failure to produce the policies of insurance; (3) failure to produce the Michigan education and training documents; and (4) failure to produce the Special Investigation Unit ("SIU") files and MCIU project files. The first three matters were raised in Plaintiffs' Motion for Entry of Default Judgment for Continuous and Repeated Discovery Abuses. The fourth item was addressed in Plaintiffs' Motion for Default for Failure to Produce Documents in Violation of Court Order.

### 1. **Insurance Policies**

Plaintiffs twice requested production of the State Farm Policy of Insurance in effect at the time of the incidents giving rise to their claims. (Plaintiffs' Exhibit 17-Plaintiffs' First Request for Production of Documents, January 18, 2007, Request No. 1; Plaintiffs' Exhibit 5-Plaintiffs' Request for Production of Documents to Defendant dated October 5, 2007, Request No. 1). Plaintiffs assert in their motion that no policies have been produced to date.

Defendants assert that the policy covering the claim of Plaintiff Jonathan Boyce was produced in December 2007. Defendant further maintains that the policies applicable to the claims of the remaining Defendants were produced "in prior litigation." At oral argument, counsel for Defendant asserted that "we thought we had produced it."

The policies of insurance in effect at the time of the incident giving rise to each Plaintiffs' claim is clearly relevant and discoverable. The applicable policies were sought in two discovery requests. In addition, my Order of July 24, 2007 directed Defendant to produce a certified copy of the policy in effect on the date of the accident giving rise to each claim. Production was to be made on or before July 31, 2007. In the face of two formal requests and a court Order, Defendant can scarcely deny its obligation to produce the

3

requested policies. It is plainly insufficient to argue that the documents in question were produced in prior litigation. The only conclusions which readily come to mind as explanations for the failure to produce the relevant policies by this date are wilfulness, and/or total ineptitude. In either event, the failure is simply inexcusable.

    **2.**    **Claims Manual**

Plaintiffs made two formal requests for Defendant's Auto Claims Manual (ACM), in January and October of 2007. (Plaintiffs' Exhibit 15-Plaintiffs' Second Request for Production of Documents, January 18, 2007, Request No. 3; Plaintiffs' Exhibit 5-Plaintiffs' Request for Production of Documents to Defendant dated October 5, 2007, Request No. 19). In addition, my Order of July 24, 2007 (Paragraph 8) directed Defendant to produce documents responsive to Request Nos. 2 and 3 of Plaintiffs' Second Request for Documents, on or before July 31, 2007. Plaintiffs assert that Defendant produced only portions of its claims manual, and that no objections to the production of the withheld portion were made. Plaintiffs acknowledge, however, that the complete manual was produced in July 2008.

Defendant attempts to excuse its tardy and incomplete production by claiming that Plaintiffs requested only "the portion" of the ACM used by claim representatives involved in their claims, and that the withheld portions of the manual are "largely irrelevant." Defendant argues further that Plaintiffs knew that the manual was not produced in its entirety, and made no complaint regarding the withheld portions. At oral argument, counsel for Defendant attempted to persuade the court that its incomplete production was a cost saving measure intended to minimize Plaintiffs' expenses. During the same argument, however, counsel acknowledged that the claims manual was stored, in full, on its

4

computers. It is apparent, therefore, that the document could have been easily produced in its entirety with minimal expenditure of time and money. Neither Plaintiffs' discovery requests nor my Order of July 24, 2007 are limited to "portions" of the ACM. Defendant purposefully produced only a fraction of the document requested/ordered to be provided to Plaintiffs. Once again, I am unable to devine an explanation for that failure which is consistent with the conclusion that Defendant acted competently and/or in good faith.

### 3. Michigan Education and Training Documents

On January 18, 2007, Plaintiffs requested production of "any and all documents relating to the education and training of claim representatives in Michigan both generally, regarding all insurance issues and specifically regarding the Michigan No Fault Automobile Insurance Act, that are provided to State Farm claim representatives." (Plaintiffs' Exhibit 15-Plaintiffs' Second Request for Production of Documents, Request No. 2). Defendant's obligation was to produce all responsive documents within 30 days. Nonetheless, a substantial number of responsive documents were withheld, without objection or claim of privilege, only to be produced at the Deposition of Pat Parr-Armelagos, in July 2008. Ms. Parr-Armelagos was the last State Farm employee to be deposed. As a result, Plaintiffs were deprived of the use of the training documents in its examination of earlier witnesses.

State Farm's brief and oral argument totally ignore its failure to respond to Plaintiffs' January 2007 discovery request. Rather, Defendant asserts that the parties discussed, in February 2008, a request by Plaintiffs that State Farm "identify a person with the most knowledge from State Farm concerning education and training of State Farm employees/claim adjusters/team leaders/claims superintendents concerning State Farm's guidelines, policies, practices and procedures for adjusting claims in Michigan. State Farm

5

identified Ms. Parr-Armelagos. Defendant maintains that it subsequently received a defective deposition notice for Ms. Parr-Armelagos but that it nonetheless "did produce 'certain' education and training materials at Ms. Parr-Armelagos' deposition on July 31, 2008 that had not been produced in response to previous discovery requests." Defendant asserts that it cautioned on the side of error in producing the additional documents, that it was not attempting to hide documents, and that it was "attempting, as best it could, to comply with Plaintiffs' vague request." (Defendant's Brief, Page 13).

State Farm argues that there is no evidence for the proposition that it wilfully withheld documents in an effort to impair Plaintiffs ability to examine its employees. The defense claims that Plaintiffs had the opportunity to examine Parr-Armelagos about the documents, and were offered the opportunity to continue the deposition, and to "specify exactly which documents they would like [her] to bring to the continued deposition." State Farm complains that, rather than avail itself of that opportunity, Plaintiffs filed the instant Motion.

Once again, I find that the Defendant has failed to meet is discovery obligations. State Farm doesn't even attempt to argue that the documents produced at the July 2008 deposition were not responsive to Plaintiffs' January 2007 Request for Production. In the absence of such a showing, I find it impossible to conclude otherwise than that State Farm intentionally failed to meet its discovery obligations.

### 4. Special Investigative Unit ("SIU") Files/MCIU Project Files

Plaintiffs assert that it became apparent early in the process of deposing State Farm employees that Defendant was withholding information. They maintain that "the original claim representatives assigned to the various files were kept in the dark regarding why the

6

files were suddenly moved to Ruthann Tuttle who is a member of the Multi-Claim Investigation Unit (MCIU) which is part of the Special Investigative Unit (SIU)." (Plaintiffs' Brief, Page 5). Defendant's explanation was that the files were reassigned to Tuttle as part of "load leveling." Plaintiffs allege, however, that Ms. Tuttle "apparently ended up with claim files of customers of State Farm that were *all represented by Liss, Seder and Andrews, P.C.*, and these are the only (sic) to which she is assigned." (Id.). Plaintiffs claim that they first learned at the deposition of Roddy Lynch, on July 14, 2008, that State Farm had not produced its entire Automobile Claims Manual. On Order of the district judge, Mr. Lynch utilized his computer to access the manual. His testimony revealed "that information regarding the SIU . . . is contained in an article within the ACM." State Farm did not make the claims manual available to Plaintiffs until the deposition of Wendy Rogers on July 15, 2008. Plaintiffs argue that State Farm had hidden the ACM in order to suppress information within it "regarding the creation of what are called 'project files' and State Farm obviously did not want any one asking about these files." (Id.). It is Plaintiffs' position that they had no way of knowing that State Farm had violated the court's Order for production of the ACM, because State Farm did not mention the withheld sections of the ACM by way of objection or privilege log.

The Brief in Support of Plaintiffs' Motion for Default for Failure to Produce Documents in Violation of Court Order quotes portions of the SIU article from the claims manual. Exhibit 6 to Plaintiffs' Brief is the SIU article. It reads in pertinent part as follows:

> Most zones have Multi-Claim Investigation Units (MCIUs). These units specialize in conducting multi-claim investigations. These units don't always handle individual claim files. In many zones their focus is to investigate the common scheme or pattern noted through frequency or suspicious loss indicators.

> A project file should be associated with each of these investigations. Project reports should be conducted at regular intervals and documented using the appropriate project form. These forms are located at State Farm Forms.
>
> \* \* \*
>
> Decentralization of MCIU associates throughout a zone is discouraged, as often the size of an investigation may require multiple claim representatives to conduct the investigation. Any plan to decentralize these units should be shared with the zone SIU consultant prior to implementation. It is the SIU section manager's responsibility to periodically meet with these units to develop and reevaluate each project's investigative strategy. The zones are encouraged to have their assigned corporate SIU claim consultants attend some of these strategy meetings. The SIU claim consultant can also assist in identifying and assessing claim procedure compliance issues.

Plaintiffs' Brief, Exhibit 6-SIU article from ACM. Plaintiffs counsel reasonably suspected that a project file may have been created with regard to their individual claims. Accordingly, the issue was raised at the deposition of Parr-Armelagos. Exhibit 7 to Plaintiffs' Brief is the transcript of Parr-Armelagos' July 29, 2008 deposition. It reads at pp. 151-64 as follows:

> Q. Has there been a project file opened up in the Multi Claim Investigation Unit?
>
> MR. SLATER: Objection to the form. Are there any project files?
>
> MR. ANDREWS: Well, a project file relative to the Armisted cases.
>
> MR. SLATER: I'm just going to object on the basis of attorney client privilege again and direct the witness not to answer any information regarding the project file on - - necessarily by attorney client information.
>
> MR. ANDREWS: You're instructing the client, so I understand, not to answer the question of whether a project file has been created in Multi Claim Investigation Unit relative to the Armisted cases, is that it?
>
> MR. SLATER: I think I need to confer with my client, by yes, I think that that potentially would invoke attorney client privilege.

8

MR. ANDREWS: Confer with your client if that's - - well, confer with your client. No, I think its better - - yeah, lets go off the record. I'll leave the room or you -

VIDEOGRAPHER: The time is now approximately 1:36 p.m., going off the record.

VIDEOGRAPHER: The time now is 1:38 p.m., going back on the record.

BY MR. ANDREWS:

Q. Ms. Parr-Armelagos, so - - do you want to say something, or we can clarify the issue.

MR. SLATER: She can proceed.

MR. ANDREWS: Okay.

BY MR. ANDREWS:

Q. Has a project file been created relative to the Armisted Cases?

A. No.

Q. Is there a Multi Claim Investigation Assignment Report that has been written?

MR. SLATER: Relative to the Armisted cases?

MR. ANDREWS: Well, relative to most any claim that is of a customer that is represented by my office.

MR. SLATER: Well, to the extent that that's beyond the scope of this deposition. This deposition is relative to these claim files.

MR. ANDREWS: Well, the problem is that is gives the witness an opportunity to say, well gee, no not relevant to these claims, but these claims are associated with it and that's my problem.

BY MR. ANDREWS:

Q. Now, is there a project file associated with the claims of customers of State Farm that are represented by this Liss, Seder and Andrews?

9

MR. SLATER: And that does call for privileged information and I'm going to direct you not to answer any information relative to the specific project files, its privileged.

MR. ANDREWS: I'm asking if they exist. There's no privilege regarding whether something is exists or not, that impossible.

MR. SLATER: It is not impossible and my position is very clear.

BY MR. ANDREWS:

Q. So State Farm has a project file relative to these claims?

MR. SLATER: You are attempting to violate the attorney client privilege and I'm directing her not to answer that question.

BY MR. ANDREWS:

Q. Lets make sure just so that later on we understand. I'm asking for the existence - - lets back it up this way and then we'll come to the afforded privilege. The Multi Claim Investigation Unit is expected to create a project file regarding its investigations, correct?

A. And as I explained to you earliers, these particular files regarding Armisted were not brought in for the purposes of a multi claim investigation. I have explained that to you on a number of occasions. They were brought in because of the extra contractual allegations, because of the extensive discovery requests that were on them, and they weren't considered or don't fall underneath the umbrella of a multi claim investigation assignment.

Q. Well, lets back up to the question. Is a project file to be created with investigations of MCI Unit?

A. When there's an MCIU project. So, these particular files, as I explained before, were not brought in with a purpose. Normally there's a project that's established and files - - will then follow. In this particular case, as I explained to you, we were asked to take these on because there was an extremely involved - - there are what, six cases all together, extremely involved and very time consuming litigation, that included institutional discovery requests, which took a great extensive amount of time in responding to.

Q. First of all, the Claim Representatives have already testified that they don't respond to institutional discovery requests.

10

A. That's correct.

Q. Okay. So, there's no question about that, true, no question about -

A. They weren't involved in response to the institutional requests, yes.

Q. And the institutional discovery requests actually are handled by an attorney in Bloomington, Illinois?

A. No.

Q. Who handles them?

A. Well, the - - they identify documents, the documents are then sent to - - am I in violation of the privilege, because these are counsel I've worked with on these?

MR. SLATER: Yes, and if it necessarily invokes communications that you've had with counsel and yes, its absolutely privileged and I direct you not to answer that question or questions -

MR. ANDREWS: I'm asking for the process, not -

THE WITNESS: The process is, I work with my corporate counsel on response to those.

BY MR. ANDREWS:

Q. It doesn't involve a Claim Representative?

A. It usually involves the Section Manager and the Team Manager.

Q. It doesn't involve a Claim Representative?

A. That's correct.

Q. Okay. Now, lets again go back to the initial question which forgive me - - I don't think that it has been answered. Is a project file to be created with respect to Multi Claim Investigation Unit investigations?

A. Yes.

Q. Okay. Now, you have advised me that these files weren't brought in to your unit for any particular investigation. Is that your testimony?

A. They were brought in because of load leveling.

Q. At some point in time, did someone decide, hey, we need to open a Multi Claim Investigation Unit matter with respect to these claims after they were brought in?

A. That would be attorney client privilege.

MR. SLATER: I'm going to direct you not to answer that question as that would be privilege.

BY MR. ANDREWS:

Q. Have you ever seen the Multi Claim Investigation Unit project file?

MR. SLATER: Same objection. Its privileged information and I'm directing you not to answer.

MR. ANDREWS: Whether she has seen something or not, cannot be privileged.

BY MR. ANDREWS:

Q. Have you seen the file?

MR. SLATER: Same objection and I will direct you not to answer that question. The existence of and any context therein is privileged. And I am certainly not representing - - Whether it does or does not exist Any inquiry in that regard though is privileged.

MR. ANDREWS: The name of the person who has generated a Multi Claim Investigation Assignment Report at State Farm is privileged?

MR. SLATER: If you want to ask generally who generates those reports. I don't have a problem with that as a general rule. But is you're asking about specific projects, regardless of what project it is, that's privileged information and I will direct her not to answer that question.

MR. ANDREWS: I want to know the name of the person that filled out a Multi Claim Investigation Assignment Report relative to the Armisted claims. I want the name of the person.

MR. SLATER: Same objection and I would direct you not to answer that question.

>MR. ANDREWS: Is the claim that the name of the individual at State Farm is privileged.
>
>MR. SLATER: The claim is that every aspect of any project is privileged.
>
>MR. ANDREWS: Would any aspect of any project associated with a Multi Claim Investigation, the claim is that is privileged?
>
>MR. SLATER: That's correct.
>
>MR. ANDREWS: So, there is information within the Multi Claim Investigation Assignment Report that is relative to the claims of Jonathan Boyce?
>
>MR. SLATER: Are you intentionally now trying to get around the privilege.
>
>MR. ANDREWS: No.
>
>MR. SLATER: I certainly cannot comment on any document that's privileged because that would be violating the privilege itself. So I cannot do that and neither can the witness. Lets move on to something that's not privileged.

Because of the impasse, counsel telephoned the magistrate judge concerning the assertion of privilege as to the mere existence of the investigation files. The court expressed scepticism as to the applicability of attorney/client privilege to that information, but declined to rule on the issue until it could be fully presented and briefed by the parties. The parties did not pursue the matter further. Plaintiffs did not test the attorney/client privilege assertion by way of a Motion to Compel. Neither did they exercise the option to reconvene Parr-Armelagos' deposition. Rather, they simply filed the instant Motion for Default Judgment.

Defendant opposes Plaintiffs' request for default judgment by reliance upon the testimony of Ron Ikens and Pat Parr-Armelagos. Ikens testified that Plaintiffs' claim files were transferred to the Multi Claim Investigation Unit for the purpose of leveling the work load of Defendant's employees. That load leveling was undertaken because Ruth Ann Tuttle "didn't have any claims at the time," and because "[t]here was no section manager . . . in the auto personal injury office in Western Michigan Claims Central" at the time. (Defendant's Exhibit 3 - Dep. of Ron Ikens at pp. 56-57). Parr-Armelagos testified that no project file was created relative to the Armisted cases. (Defendant's Exhibit 2 - Parr-Armelagos Deposition at pp. 152-54, ll. 13-15). Simply put, Defendant argues that "it is completely illogical to ask the court to default State Farm for failing to produce something that does not exist." (Defendant's Brief, Page 4). In the absence of evidence contradicting Ikens and Parr-Armelagos' testimony, I agree.

Plaintiffs' counsel maintained at oral argument that they should not be required to accept the testimony of Ikens and Parr-Armelagos on the issues of load leveling and the existence of project files. Plaintiffs, however, have not identified other witnesses who might offer contradictory evidence. Plaintiffs further argued that any existing special project files relating to their counsel necessarily relate to their individual claims. Parr-Armelagos, however, plainly testified that no project files were compiled on the Armisted cases. The relevance of files dealing with persons other than the Plaintiffs simply escapes me. Ultimately, I find that Plaintiffs' prayer for a default judgment as to this fourth issue must be denied because they made no effort to challenge Defendant's assertion of attorney-client privilege. While I have serious doubts as to the validity of State Farm's privilege claim, I am not prepared to conclude that it was made in bad faith, or to recommend default simply

because it was asserted. In the absence of effort by Plaintiffs to overcome the objection, there is simply no basis for an entry of default.

As stated in Sections C 1-3 of this report, I conclude that Defendant's failure to produce the relevant insurance policies, claims manuals and training documents in a timely fashion is unjustifiable. Refusal to produce the basic contracts which, incontestably, define the legal relationships between the parties is inexcusable. Mere oversight or negligence could not possibly explain the failure to produce these basic documents after two formal written discovery requests and a court Order were issued with regard to them. I conclude that the failure was wilful.

My conclusion with regard to the failure of Defendant to produce its claims manual is the same. Nothing in Plaintiffs' discovery requests, or in my Order of July 24, 2007, would warrant a reasonable conclusion on Defendant's part that only portions of the document were to be produced. Defense counsel's assertion that it withheld (without mention) large sections of the manual in a charitable effort to save Plaintiffs' copy expenses is nothing short of astonishing, in light of the fact that the entire manual could have been reproduced almost instantaneously by computer to a compact disc for next to nothing. I find that the failure was wilful and purposeful.

A similar finding is warranted with regard to the Michigan Education and Training documents. They were requested in January 2007, and not produced until the very day of Plaintiffs final discovery deposition, in July 2008. I find that the failure to produce the documents in a timely fashion was intentional, and that Plaintiffs have satisfied the first criterion in the four part test set out in <u>Bank One of Cleveland, N.A. v. Abbe</u>, 916 F.2d 1067 (6th Cir. 1990).

Even if an offending party's conduct is wilful, a judgment by default is inappropriate in the absence of prejudice resulting from the improper conduct. In my view, the level of prejudice required to warrant a default judgment must be more substantial than inconvenience or irritation. As the docket card will reflect, the discovery process in this case has been arduous, to say the least. Both sides of the case have often complained of a lack of civility and cooperation on the part of opposing counsel. I have admonished counsel on both sides of the courtroom regarding their duty to cooperate in the discharge of their discovery obligations. Defendant's conduct with regard to the three subject areas addressed in this Report have been substandard. I can well understand the Plaintiffs' frustration in its attempt to secure the subject documents.

State Farm's attorneys emphasized at oral argument that one of Plaintiffs' attorneys is a former State Farm employee, and is familiar with its business practices. Plaintiffs do not dispute that the Boyce insurance policy was produced in this case, and that the other contracts were produced in prior litigation. The latter fact does not excuse Defendant's failure to produce the requested policies in this action. Nonetheless, Plaintiffs have shown no prejudice to their ability to litigate the case on its merits. State Farm paid benefits to these Plaintiffs for extended periods of time, and there is no showing that any term of the contract is contested. Rather, the case will be decided upon the facts relating to Plaintiffs' medical conditions. I find it unlikely that any passage in the State Farm Automobile Claims Manual will be contested. Plaintiffs have had the manual since July 2008, and have raised no issue based on it beyond the project files which were addressed in Section C 4 of this Report. My conclusion is the same with regard to the State Farm training documents. The documents were ultimately produced, and Plaintiffs have identified no contested issue with

respect to them. There is no cause to believe that Defendant's employee training will be an issue at trial. Thus, while I consider Defendant to be culpable in its failure to produce documents, I simply do not find that its conduct warrants an entry of judgment by default.

The third factor set out in <u>Bank One of Cleveland</u>, <u>supra</u>, is whether the offending party was warned that a failure to cooperate could lead to default. While Plaintiffs are correct that the parties have been admonished concerning their discovery obligations, I recall no instance in which I raised the possibility of default judgment.

The final factor to be considered in ruling on Plaintiffs' Motion is whether less drastic sanctions were first imposed or considered. I find that this criterion is satisfied, in light of my numerous discussions with counsel on the subject of their discovery obligations.

In summary, I find the Defendant culpable in its failure to meet its obligations with respect to the documents discussed above. I am certain that State Farm's conduct has caused Plaintiffs' counsel significant inconvenience, waste of time and frustration. I do not find, however, that Plaintiffs have demonstrated sufficient prejudice to warrant the imposition of a default judgment upon the Defendant. Rather, this case should be decided on its merits. Nonetheless, I believe that State Farm's conduct, as discussed herein, warrants a substantial monetary sanction.

For all of the reasons stated above, I recommend that Plaintiffs' Motion for Entry of Default Judgment for Continuous and Repeated Discovery Abuses be denied as to the prayer for default judgment, but that a substantial monetary sanction should be imposed upon the Defendant for its obstructive conduct. I further recommend that Plaintiffs' Motion for Default for Failure to Produce Documents in Violation of Court Order be denied.

## III. NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. Section 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. United States v. Walters, 638 F.2d 947 (6th Cir. 1981), Thomas v. Arn, 474 U.S. 140 (1985), Howard v. Secretary of HHS, 932 F.2d 505 (6th Cir. 1991). Filing of objections that raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Smith v. Detroit Federation of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987), Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall not be more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

<table>
<tr><td>DATED: October 23, 2008</td><td>s/Donald A. Scheer<br>DONALD A. SCHEER<br>UNITED STATES MAGISTRATE JUDGE</td></tr>
</table>

---

### CERTIFICATE OF SERVICE

I hereby certify on October 23, 2008 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on October 23, 2008: **None.**

s/Michael E. Lang
Deputy Clerk to
Magistrate Judge Donald A. Scheer
(313) 234-5217